VACATED PURSUANT TO 5/11/06 ORDER

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CONCORDIA THEOLOGICAL SEMINARY, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) CAUSE NO.: 1:05-CV-285 |
| WILLIAM C. HENDRY d/b/a STRATEGIC DEVELOPMENT SOLUTIONS, | ) ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is Plaintiff Concordia Theological Seminary's Motion for Leave to File Amended Complaint. (Docket # 20.) For the following reasons, the Seminary's Motion will be DENIED.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Concordia Theological Seminary, Inc. filed a complaint in the Allen Circuit Court against William C. Hendry d/b/a Strategic Development Solutions, asserting state law claims against Hendry for breach of contract, fraud, conversion, and deception. (Compl. 1-6.) Essentially, the Seminary alleged that Hendry failed to disclose his employment with California State University, Long Beach when he negotiated for employment with the Seminary and that Hendry continued working at California State after the Seminary hired him full-time. (Compl. 1-3.)

Hendry then removed this case to the District Court. (Docket # 2.) Hendry then moved to dismiss the fraud, conversion, and deception claims on September 16 (Docket # 9), arguing that the Seminary failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court

granted the motion on November 9, dismissing the three claims with prejudice and leaving only the breach of contract claim. (Docket # 17.)

The parties filed their Report of Parties' Planning Meeting, which was made an Order of the Court on October 4, 2005. (Docket ## 11, 13.) This Report listed November 13, 2005, as the deadline for the Seminary to amend it pleadings and December 13, 2005, as the deadline for Hendry to amend his pleadings. (Report of Parties' Planning Meeting ¶ 4.)

On November 10, Hendry filed a Joint Motion to Extend Pleadings Amendment Deadlines (Docket # 18), asking the Court to extend the deadline for the Seminary to amend its pleadings to December 13, 2005, and to extend the deadline for Hendry to amend his pleadings to December 31, 2005. (Joint Mot. to Extend Pleadings Amendment Deadlines ¶¶ 1, 4.) The Court granted the motion that same day. (Docket # 19.)

After missing the December 13 deadline, the Seminary filed a Motion for Leave to File an Amended Complaint on December 28, 2005, wishing to re-plead the previously dismissed fraud claim and to add a claim based on the Indiana Trade Secrets Act. (Docket # 20.) The matter is now fully briefed. (*See* Docket ## 26, 31, 36, 42.)

## II. STANDARD ON MOTION TO AMEND PLEADINGS

A party may amend its pleading once as a matter of course at any time before a responsive pleading is served; otherwise, it may amend only by leave of the court or by written consent of the adverse party. Fed. R. Civ. P. 15(a). Leave to amend is freely given when justice so requires.[1] *Id.* However, this right is not absolute, *Brunt v. Serv. Employees Int'l Union*, 284

---

[1] Generally, leave to amend is "especially advisable when such permission is sought after the dismissal of the first complaint." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Com'n*, 337 F.3d 682, 687 (7th Cir. 2004). Here, however, the Court dismissed Counts II, III, and IV, including the Seminary's fraud claim, with prejudice; therefore, the Seminary seemingly cannot re-plead its allegation of fraud. *See Blickenstaff v. R.R. Donnelly & Sons*

F.3d 715, 720 (7th Cir. 2002), and can be denied for undue delay, bad faith, dilatory motive, prejudice, or futility. *Ind. Funeral Dir. Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003).

Moreover, the requirements of Rule 15 must be read in conjunction with the requirements of Rule 16, because "[o]nce the district court [has] filed a pretrial scheduling order pursuant to [Rule] 16 which establish[es] a time table for amending pleadings that rule's standards [control]." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); *Kortum v. Raffles Holdings, Ltd.*, No. 01 C 9236, 2002 WL 31455994, at *3 (N.D. Ill. Oct. 30, 2002); *Tschantz v. McCann*, 160 F.R.D. 568, 570-71 (N.D. Ind. 1995). Rule 16 provides in part:

> (b) [The district court] . . . shall, after receiving the report from the parties under Rule 26(f)[,] . . . enter a scheduling order that limits the time (1) to join other parties and to amend the pleadings; (2) to file and hear motions; and (3) to complete discovery . . . . A schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge.

Fed. R. Civ. P. 16(b). Thus, a party seeking to amend a pleading after the date specified in a scheduling order must first show "good cause" for the amendment under Rule 16(b); then, if good cause is shown, the party must demonstrate that the amendment is proper under Rule 15. *Tschantz*, 160 F.R.D. at 571. "A court's evaluation of good cause is not co-extensive with an inquiry into the propriety of the amendment under . . . Rule 15." *Id.* (quoting *Johnson*, 975 F.2d at 609). Rather, the good cause standard focuses on the diligence of the party seeking the

---

*Co. Short Term Disability Plan*, 378 F.3d 669, 674-75, 681 (7th Cir. 2004) (finding sanctions appropriate after plaintiff filed an amended complaint reasserting a claim the district court dismissed with prejudice under Rule 12(b)(6)); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423 (7th Cir. 1996) (allowing plaintiff to immediately appeal district court's dismissal with prejudice for failure to state a claim under Rule 12(b)(6)). As the Court will conclude that the Seminary's motion does not meet the requirements of either Rule 16(b) or Rule 6(b), further discussion on this point is not necessary.

3

amendment. *Trustmark Ins. Co. v. General & Cologne Life*, 424 F.3d 542, 553 (7th Cir. 2005); *Tschantz*, 160 F.R.D. at 571. In other words, to demonstrate good cause, a party must show that despite its diligence, the time table could not reasonably have been met. *Tschantz*, 160 F.R.D. at 571.

While Rule 16(b) addresses the specific deadline for joining parties or amending the pleadings, Rule 6(b) provides a more general standard for the extension of most deadlines, whether specified in the Rules or set by court order. *Higdon v. Wells County Sheriff's Dep't*, No. 1:04 CV 00064, 2005 WL 2365244, at *3 (N.D. Ind. May 2, 2005). Under Rule 6(b), if a request is made for an extension of time after a deadline passes, the court may extend the deadline "where the failure to act was the result of excusable neglect." Fed. R. Civ. P. 6(b). Excusable neglect is "somewhat of an elastic concept, which at bottom is an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Doe v. City of Marion, Ind.*, No. 1:00-CV-468, 2002 WL 32072793, at *1 (N.D. Ind. March 27, 2002) (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assoc., Ltd. P'ship*, 507 U.S. 380, 392, 395 (1993)) (internal quotation marks omitted). When assessing excusable neglect, the court should consider the following factors: 1) "the danger of prejudice to the nonmovant"; 2) "the length of the delay and its potential impact on judicial proceedings"; 3) "the reason for the delay, including whether it was within the reasonable control of the movant"; and 4) "whether the movant acted in good faith." *Id.*

### III. DISCUSSION

The Seminary asserts that it had good cause for missing the December 13 deadline for filing its amended complaint, namely that despite its diligent effort to obtain documents from Hendry and other sources, it did not receive them until after the deadline had passed.

Furthermore, the Seminary claims that it simply overlooked or mis-read the December 13 deadline, and but for that would have filed a request for an extension of time; in other words, its failure to meet the deadline was the result of excusable neglect.

*A. The Seminary has not shown "good cause" as required by Rule 16(b)*

Here, the Seminary wishes to amend its complaint to re-plead the previously dismissed fraud claim and to add a claim based on the Indiana Trade Secrets Act. It argues that "good cause" exists because despite its "diligent efforts" (Pl.'s Reply to Def.'s Objections to Pl.'s Mot. for Leave to File Am. Compl. 8), the Seminary was unable to obtain some important documents until after the December 13, 2005, deadline, including telephone records showing the dates of phone calls between Hendry and the Seminary, and letters regarding the offer and acceptance of employment between California State and Hendry.

In its reply brief and supporting affidavits, the Seminary makes much of Hendry's seemingly uncooperative attitude in providing initial disclosures and in responding to other discovery requests. Specifically, the Seminary claims that when it belatedly received initial disclosures from Hendry, the telephone records it sought "were so heavily redacted that they were essentially meaningless." (Pl.'s Reply 4.) After Hendry did not provide supplemental responses regarding his phone records, the Seminary attempted to obtain these records from Hendry's phone company, which declined to produce them due to privacy laws. Twice thwarted, the Seminary claims it then requested a copy of its own phone records on November 19, and received them around December 19.

Furthermore, because Hendry was allegedly not providing the Seminary with other discovery, it contacted California State to obtain Hendry's employment records. The Seminary

5

claims that although its efforts began on August 9, 2005, it did not receive the requested documents from California State until December 20. These documents ostensibly included a letter from California State offering employment to Hendry, already having previously been produced by Hendry on October 19, 2005, and Hendry's letter accepting this offer.

None of these efforts demonstrate due diligence. Although the Seminary alleges that Hendry attempted to avoid discovery on numerous occasions, it never asked the Court for assistance in obtaining the documents so it could meet the deadline. In addition, the Seminary waited until November to request a copy of its own phone records, even though it seemingly believed, based on an order issued earlier as well as Hendry's arguments, that it would need these records to re-plead the fraud claim.[2]

At least that is the argument we hear now: that the Seminary needed the phone records to establish the "specific date and time of the communications . . . to plead the claim for actual fraud under Rule 9(b)" and needed Hendry's acceptance letter to "conclusively establish" that he was employed with California State when he negotiated employment with the Seminary. (Pl.'s Sur-Reply in Supp. of Mot. for Leave to Am. Compl. 5-6.)

These propositions carry forward to the Seminary's proposed Amended Complaint, where it seeks to change the former allegation that Hendry failed to disclose his employment with California State, to the assertion that during conversations between the Seminary's Vice

---

[2] The Seminary never explains why any of the discovery is at all relevant to the purported Trade Secrets Act claim, the allegation that Hendry misappropriated the Seminary's confidential and proprietary information. In fact, the Seminary never mentions the Indiana Trade Secrets Act claim in its "Sur-Reply in Support of Motion for Leave to Amend Complaint," focusing its efforts entirely on the fraud claim. Indeed, the Trade Secrets Act claim seems to be centered on events that post-date Hendry's negotiation of employment with the Seminary, making the specific dates that Hendry negotiated employment with the Seminary and the dates that he obtained employment with California State irrelevant. (*See* Am. Compl. ¶ 25.) Therefore, the Seminary fails to establish good cause why it could not have added the Trade Secrets Act claim before the December 13 deadline and will not be permitted to do so now.

6

President for Institutional Advancement and Hendry, Hendry affirmatively represented that he was not employed. These changes apparently stem from the Court's finding that the original complaint did not state a claim for "actual fraud" because there was no alleged material misrepresentation by Hendry. The substance of these conversations, however, were certainly within the Seminary's knowledge before the deadline passed, and the Seminary concedes that it could have stated them earlier, and with specificity, even without the allegedly elusive phone records.[3]

In addition, the Seminary did not need Hendry's letter accepting employment with California State to re-assert its fraud claim, as the Seminary is not required, as it seems to believe, that it must "conclusively establish" (Pl.'s Sur-Reply 5-6) a claim before filing a complaint. While the Seminary ostensibly knew at the time it filed its original complaint that Hendry accepted employment with California State on February 3, 2003, and was, therefore, working for California State at the time he negotiated and accepted employment with the Seminary (*See* Compl. ¶¶ 4-8), it is under no obligation to prove these allegations at the pleading stage. *See Trustmark*, 424 F.3d at 552 (plaintiff, who alleged it could not "confirm" until after the deadline for filing an amended complaint that defendant made misrepresentations, did not demonstrate good cause since the plaintiff had "harbored suspicions" that defendant made misrepresentations even before filing the initial complaint).

---

[3] The Seminary argues that Hendry "cannot have it both ways," asserting that Hendry's earlier Motion to Dismiss, which sought to dismiss the Seminary's fraud claim because it did not allege the particular dates of the alleged fraud, is incompatible with his current argument that the Seminary does not need the telephone records to re-assert the fraud claim, since it certainly knew the content of the conversations before the deadline. Hendry's contentions, however, do not appear to conflict. After all, the fraud count was not dismissed because the Seminary failed to provide specific dates that misrepresentations were made; rather, the fraud count was dismissed because the Seminary did not allege any actual, material misrepresentations or that Hendry even had a duty to disclose.

Accordingly, for all these reasons, we find that no good cause has been shown and therefore will not disturb the pleading deadline previously imposed.

*B. Concordia fails to demonstrate "excusable neglect" that would allow an amendment after the deadline*

The Seminary alleges that it missed the December 13 deadline for filing an amended complaint, and failed to ask for an extension, due to excusable neglect, arguing that the following three *Pioneer* factors weigh in its favor: 1) "the danger of prejudice to [Hendry]"; 2) "the length of the delay and its potential impact on judicial proceedings"; and 3) "whether the [Seminary] acted in good faith." *Doe*, 2002 WL 32072793, at *1 (quoting *Pioneer*, 507 U.S. at 395). The Seminary claims that there is "very little" prejudice to Hendry and that the impact on these judicial proceedings will be minimal because: 1) it filed its motion for leave to file an amended complaint only fifteen days (eight business days) after the December 13 deadline; 2) it filed the motion before Hendry's deadline for filing an amended answer; and 3) the matter is not set for trial until October 17, 2006. Furthermore, the Seminary claims that the record reflects good faith on its part, as it has "diligently" prosecuted the case.

Nonetheless, fault for missing a deadline remains an important component of the analysis. *See In re KMart Corp.*, 381 F.3d 709, 715 (7th Cir. 2004) (citing *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004); *Graphic Commc'ns Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001); *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000)) (recognizing that although the Seventh Circuit has not followed the lead of other circuits in ruling that fault in delay is the "pre-eminent factor" in the *Pioneer* analysis, the reason for delay can still outweigh the other factors). Indeed, "[t]he word

8

case 1:05-cv-00285-TLS   document 46   filed 03/10/2006   page 9 of 10
USDC IN/ND case 1:05-cv-00285-TLS   document 46-2   filed 03/10/06   page 9 of 10

'excusable' would be read out of the rule if inexcusable neglect were transmuted into excusable neglect by a mere absence of harm." *Prizevoits v. Indiana Bell Telephone Co.*, 76 F.3d 132, 134 (7th Cir. 1996).

Here, the Seminary claims that it "inadvertently" missed the December 13 deadline, alleging that it "simply missed the deadline," and that it was "a matter of simple oversight." (Pl.'s Reply 9-10.) However, "inadvertence . . . [does] not usually constitute 'excusable' neglect." *Ardisam, Inc. v. Ameristep, Inc.*, 343 F. Supp. 2d 726, 726 (W.D. Wis. 2004) (citing *Pioneer*, 507 U.S. at 392); *see also Moore's Federal Practice* § 6.06[3][c] (2004) ("[I]gnorance of when a time period expires does not qualify as excusable neglect, nor does . . . inadvertence, or other manifestation of carelessness or laxity.") In fact, it is difficult to understand how missing the deadline was a "matter of simple oversight," given that the Seminary actively contacted Hendry to request the extension, signed a stipulation to that effect, and would have received the Court's November 10 order granting the extension. Given these opportunities, the Court will not translate Concordia's alleged "inadvertence" into "excusable neglect."

Moreover, allowing the Seminary to re-plead a previously dismissed claim and to assert a new claim on the virtual eve of the close of discovery would necessitate the extension of the discovery deadline, as well as other deadlines, including the firm trial date. The Court will not adjust its deadlines on the sole proposition that the failure of counsel to read a Court Order re-setting a deadline, that they themselves requested, somehow constitutes excusable neglect.

### IV. CONCLUSION

Because the Seminary has failed to show good cause under Rule 16(b) or excusable neglect under Rule 6(b), its Motion for Leave to File Amended Complaint (Docket # 20) is

DENIED.

SO ORDERED.

Enter for March 10, 2006.

S/Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge